# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| REGINALD E. ROBERTS and | : | Bankruptcy No. 07-15653DWS |
| LISA E. ROBERTS, | : | |
| | : | |
| Debtors. | : | |

# OPINION

**BY:  DIANE WEISS SIGMUND, United States Bankruptcy Judge**

The Chapter 13 Trustee (the "Trustee") has filed an objection (the "Objection") to the

Chapter 13 plan filed by Reginald and Lisa Roberts (hereinafter "Reginald" and "Lisa" and,

collectively, "Debtors") and a Motion to Dismiss their case (the "Motion").  Both the

Objection and Motion are premised on the same grounds:  that Debtors have not proposed

a confirmable plan since their proposed plan fails to provide for the payment of all of their

"projected disposable income" during the five-year commitment period as required by

11 U.S.C. § 1325(b),[1] as amended by the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA").  For the reasons that follow, the Trustee's Objection

shall be overruled and the Motion shall be denied.

---

[1] The Motion also raises the issue of plan payment arrears, which was also the subject of
a new dismissal motion filed by the Trustee while this matter was pending.  That motion has been
withdrawn so presumably plan payments are no longer an issue.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 27,2007, Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. Along with the petition, Debtors filed an Official Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "Form 22C"). On that form, Debtors disclosed current monthly income of $8,260, or annual income of $99,120. Because this is above the median family income for a Pennsylvania family of three (i.e., $62,168) Debtors were required to fill out the remaining parts of Form 22C to determine their "disposable income." After deducting various allowances, Debtors have monthly disposable income of **negative** $776. The Trustee does not contest the accuracy of the Form 22C data.

In contrast, Debtors' amended Schedule I and Schedule J indicate net monthly income of $384.[2] Doc. No. 1. Their proposed 60-month plan, i.e., ending in September 2012, is funded by $300 payments for the first four months which then increase to $315 for the remaining 56 months, totaling $18,840. The bulk of these funds is directed to secured claims of $15,469. After the Trustee's commission and the $1,700 fee to Debtors' attorney, there appears little left for distribution to holders of unsecured claims. The proof of claim docket indicates general unsecured claims totaling $33,178.94.

As of the petition date, Reginald owed $4,051 on a loan under the 401(k) retirement plan with his employer, a subsidiary of the Estee Lauder Corporation. Schedule D. Reginald is paying back his loan at a rate of $44 per weekly pay period, or $176 per month.

---

[2] I recalculated this amount as Schedule I has been amended without any corresponding amendment to Schedule J.

At that rate, the loan should be paid off in June or July of 2009.   Amended Schedule I,

Line 4.d; Tr. at 56.  Lisa also has a loan from her employee pension plan that, as of June

2007 totaled $12,455.85.  She repays the loan through deductions of $226.47 out of her

bi-weekly paycheck or approximately $453 per month. Exhibit D-4 (Certification of Payroll

Deductions).  Her loan will be paid off in August 2009.  Together, Debtors' pension loan

payments total approximately $629 per month.  There is no dispute that when both loans

are paid off, there will be at least three years remaining to complete their Chapter 13 plan.

Debtors have well-established job histories.  Reginald has been employed with his

company for 16 years and Lisa has been employed with the State of New Jersey for 21 years.

Amended Schedule I.  No evidence was presented that their employment will change in

the foreseeable future.

## DISCUSSION

### A.

The Trustee objects to confirmation of the Plan as not having been proposed in good

faith, and has joined that objection with a motion to dismiss the Chapter 13 case on similar

grounds.  The essence of his argument is that Debtors are not dedicating all of their

"projected disposable income" to the Plan during the applicable period pursuant to the

requirement of § 1325(b)(1)(B) because of their failure to step up their Plan payments

when their pension loan repayments cease.[3]  The disposable income requirement is set

forth in § 1325(b)(1) as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the
> confirmation of the plan, then the court may not approve the plan unless, as
> of the effective date of the plan-
>
>> (A) the value of the property to be distributed under the plan on
>> account of such claim is not less than the amount of such claim;
>> or
>>
>> (B) the plan provides that all of the debtor's projected disposable
>> income to be received in the applicable commitment period
>> beginning on the date that the first payment is due under the
>> plan will be applied to make payments to unsecured creditors
>> under the plan.

11 U.S.C. § 1325(b)(1).  The Trustee bears the initial burden of presenting evidence that the

Debtor's Plan does not satisfy § 1325(b).  In re Orawsky, 387 B.R. 128, 138 (Bankr. E.D. Pa.

2008).

As noted, the Trustee's grounds for the Objection were based on good faith,

a contention I advised the Trustee's counsel at the hearing that I found unpersuasive.[4]

As I stated then, I could not conclude that any Plan that was premised on an interpretation

---

[3] The Objection states that the Plan has not been proposed in good faith because Debtors are
contributing to a 401k loan and loan repayment and unsecured creditors are receiving a minimal
distribution.  However, the Trustee has refined his argument to now contend that it is the failure to
increase the plan payments when the loan payments are concluded that evidences lack of good faith,
and that is the issue that was framed for the Court.  Moreover, I understand the Trustee to not only
be contending that the Plan be denied on good faith grounds but also on the grounds that Debtors
have not committed all their disposable income to the Plan.

[4] Debtors claim I have ruled adversely on this issue and do not address it in their
memorandum; the Trustee claims otherwise and presses the argument in his brief.  While I think it
was fair to conclude that I was not persuaded by that claim, in taking this matter under advisement,
I did not limit the Trustee by any bench ruling.  However, as noted, my conclusion is the same and
will be supported herein.

of a relatively new, unclear and controversial statute could be proposed in bad faith. See In re Murphy, 375 B.R. 919, 923 (Bankr. M.D. Ga. 2007) (finding that debtor had not acted in bad faith in relying on uncertainty in the law arising from "hanging paragraph" of § 1325 and conflicting opinions within the district). As discussed below, the amended disposable income requirement of § 1325(b)(1)(B) and its incorporation of the § 707 (b)(2) means test has probably generated more divergent written opinions than any other provision of BAPCPA. The approach taken by Debtors here finds considerable support in the decisional law. Thus, I stated that while Debtors may not have adequately funded their Plan by reason of the projected disposable income requirement so as to foreclose confirmation, I would not find nor would I dismiss their case as having been premised on a plan proposed in bad faith. The Trustee has not subsequently convinced me otherwise.

Good faith as a test of a debtor's commitment to pay his creditors dominated the landscape in the early years of the Bankruptcy Reform Act of 1978. The courts struggled with such questions as whether a plan that paid nothing or little to unsecured creditors could be found to be proposed in good faith. Needless to say, the subjectivity of this test resulted in divergent results from court to court. In 1984, Congress amended the Bankruptcy Code to, inter alia, add the provision that required a debtor to dedicate all his projected disposable income to make payments under his Chapter 13 plan. 11 U.S.C. § 1325(b)(2) (Oct. 16, 2005). With the imposition of that standard, many courts concluded that good faith had no place as an economic test of the debtor's effort. K. Lundin, Chapter 13 Bankruptcy, § 193.1 at 193-1 to 193-9 (3d ed. 2000 & Supp. 2004) (*citing* cases). Rather the pre-BAPCPA

economic tests for confirmation are expressly set forth in the best-interests of creditors test of § 1325(a)(4), the feasibility test of § 1325(a)(6), the disposable income test of § 1325(b) and the duration limitation of § 1322(d), and "there is thus little if any content to the good-faith test." Id. at 193-2 (*quoting* In re Smith, 286 F.3d 461, 468 (7th Cir. 2002)).

Under former § 1325(b)(2), disposable income was defined as "income which is received by the debtor and which is not reasonably necessary to be expended" for (1) the support of debtor and debtor's dependants, (2) a statutory allowance for charitable contributions, and (3) certain business expenses, if applicable. 11 U.S.C. § 1325(b)(2) (Oct. 16, 2005). In pre-BAPCPA practice, a debtor's "projected disposable income" was determined by looking at his income and expenses as set forth in Schedules I and J. If accurate and "reasonably necessary," a determination made by the court, the Schedule J expenses were subtracted from Schedule I income and that result was typically designated for payments to the plan which were directed to pay administrative, priority and secured as well as general unsecured claims.

It is generally accepted that Congress's intention in amending the disposable income test was to substitute a more objective standard that would leave little room for judicial discretion. See In re Cox, --- B.R. ----, 2008 WL 4091004, *8-9 (Bankr. W.D. Mo. 2008) ("in many respects [including §1325(b)] BAPCPA was designed to limit the discretion of bankruptcy judges); Keith M. Lundin, Ten Principles of BAPCPA: Not What Was Advertised, 24-7 Amer. Bankr. Inst. J. 1, 69 (September 2005) ("BAPCPA is packed with provisions intended to "reduce the discretion" of bankruptcy judges."). In espousing a good faith test for required plan payments, the Trustee seeks to increase, rather than limit,

-6-

the role of the court in reviewing a debtor's required commitment under a Chapter 13 plan. I respectfully suggest that the good faith paradigm has no place in this analysis and a debtor's economic effort must be measured by the above provisions of the Code identified by Judge Lundin.[5] Thus, the question before me is whether the test of projected disposable income as now framed by BAPCPA requires Debtors to propose a plan that steps up payments to include amounts now being properly dedicated to repayments of their pension loans.

## B.

Under BAPCPA, if the trustee objects to confirmation as is the case here, the court may not approve the plan unless, as of the effective date of the plan, inter alia,[6] the plan

---

[5] I thus respectfully disagree with the decision of the bankruptcy court in In re Anstett, 383 B.R. 380 (Bankr. D.S.C. 2008) cited by the Trustee. In Anstett, the court found that it could reject the invitation to "step into the quagmire of the calculation of disposable income in order to arrive at a monthly plan payment" because it had the authority to make an independent review of the propriety of plan confirmation. It found that one of the requirements was whether the plan represented a good faith effort to satisfy creditors, citing pre-BAPCPA circuit court cases, and concluded that "the strict, mechanical application of § 1325(b)(1)(B) following computation of disposable income using artificial expenditures does not necessarily satisfy the requirement to propose a plan in good faith." Id. at 386. While a seductive approach to the thorny task of attempting to construe BAPCPA, I cannot conclude that the court has this leeway. Rather the judge's task is to try to fashion a reasoned decision from a statute that often defies logic and common sense. Fortunately, as discussed below, in reaching my decision, I too will not have to decide the ultimate issue since the unchallenged facts of this case require a narrow ruling.

In rejecting the good faith objection, I am expressly not addressing circumstances where there has been a "blatant" unfair "manipulation" of the means test. As noted by my colleague Judge Frank, good faith is only implicated in "extreme circumstances" where the debtor's conduct reaches this level and offends the integrity of the bankruptcy system. In re Orawsky, 387 B.R. 128,153 and n. 44 (Bankr. E.D. Pa. 2008) (quoting In re Briscoe, 374 B.R. 1, 22 (Bankr. D. D.C. 2007)).

[6] The "best interest of creditors" requirement of subsection (b)(1)(A) is not raised in this contested matter.

-7-

provides all of the debtor's projected disposable income ("PDI") to be received in the

applicable commitment period will be applied to make payments to unsecured creditors

under the plan. 11 U.S.C. § 1325(b)(1)(B).   The amendment added the concept of

commitment period, not at issue in this case, and restricted payment of projected disposable

income to unsecured creditors.  As my colleague, Judge Fox recently noted:  "Thus, the

present computation of disposable income is likely to be only a component of a chapter 13

debtor's plan payments, since the debtor must pay priority and administrative creditors, and

will typically also provide payment to secured creditors." In re Davis, — B.R. —, 2008 WL

2858437 at *4 (Bankr. E.D. Pa. 2008).  The Plan that Debtor proposes for the most part pays

secured claims with an unquantified but, according to the Trustee, _de minimus_ pro rata

payment to unsecured creditors.

The definition of "disposable income" under BAPCPA § 1325(b) reflects the effort

by Congress to fashion an objective standard that will allow the court and parties to

measure whether the debtor has fulfilled his payment obligation to unsecured creditors.[7]

---

[7]  Section 1325(b) provides in pertinent part:

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended-

> (A)(I) for the maintenance or support of the debtor or a dependent of
> the debtor, or for a domestic support obligation, that first becomes
> payable after the date the petition is filed; . . .

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be

(continued...)

Contrary to the pre-BAPCPA analysis where the court sought to ensure that the debtor committed all his disposable income to his plan without regard to the recipient of that income, BAPCPA substitutes a legislatively designed formula that sets a minimum requirement of payments to unsecured creditors.  It introduces the new concept of current monthly income ("CMI") which is defined by § 101(10A) as a six-month historical average income ending on the petition date, exclusive of child support, foster care, and certain disability payments. Obviously this differs from income as of the petition date as reported on Schedule I, the prior starting point for a disposable income determination. Likewise the "amounts reasonably necessary to be expended" are no longer determined by reference to Schedule J but "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)," i.e., the "means test" allowances for above-median debtors, which are in turn determined by National and Local Standards issued by the Internal Revenue Service.

Also of particular relevance here, BAPCPA added a new provision which states as follows: "A plan may not materially alter the terms of a loan described in section 362(b)(19)

---

(...continued)
> determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than-
>
> . . .
>
> (B)  in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; . . .

11 U.S.C. § 1325(b)(2)-(3). It is undisputed that Debtors' family income is greater than the median for their family size in Pennsylvania, and that § 1325(b)(3) is therefore applicable. For a debtor with below median CMI, the expense component of disposable income continues to be determined with reference to the Schedule I and J.  In re Marchionna, --- B.R. ----, 2008 WL 4056187, *4 (Bankr. N.D. Ohio 2008).

[i.e., a retirement/pension plan under certain provisions of the Internal Revenue Code as stipulated here] and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."[8]  11 U.S.C. § 1322(f).  The Trustee does not dispute the deduction Debtors have taken for their pension loan repayments but asserts that when they cease, a like amount must be added to the monthly plan payment.

The use of these formulas and exemptions from income can result in a somewhat counterintuitive outcome.  As noted by one court:

> For any number of reasons, because a debtor has income not counted in the definition of current monthly income, has housing or transportation expenses less than the permissible IRS deductions, has huge secured debt for luxury items that, bizarrely, may be deducted in full as a reasonable and necessary expense, or wishes to continue to contribute to or repay a loan to her 401(k) plan rather than pay her unsecured creditors, a debtor under the new "disposable income" test may show a zero or negative number, yet may be able to make the required showing that she actually has enough income to fund a confirmable plan.

In re Alexander, 344 B.R. 742, 750 (Bankr. E.D. N.C. 2006).  That is the situation here.  As noted above, Debtors' Form 22C indicates on line 58 "monthly disposable income under § 1325(b)(2)" of **negative** $776.  Nevertheless, as demonstrated by their Amended Schedule I and Schedule J, Debtors have actual income sufficient to fund a chapter 13 plan.  However, the Trustee does not challenge the accuracy or the propriety of Debtors' claimed income and deductions including the deduction from projected disposable income for their pension loan repayments, as reflected on line 55 of Form 22C.  Nor does he state

---

[8] Section 362(b)(19) excludes from the automatic stay withholdings and collections from the debtor for certain pension and retirement plans as well as repayment of loans from such plans. The parties agree that Debtors' pension loan payments fall within this provision.

that Debtors should be committing any of that actual income to their Chapter 13 plan. Rather the Trustee's objection is based on the undisputed reality that the pension loans will be satisfied in Year 2 of Debtors' Plan, absent unforeseeable changes in Debtors' employment. The Trustee argues that § 1325(b)'s requirement of "<u>projected</u> disposable income" requires consideration of this future event and that the Plan should therefore reflect that upon satisfaction of the loan, the monies formerly dedicated to those loans should be directed to Debtors' plan.[9]

Debtors' position is that future considerations are irrelevant to confirmation of their Plan because § 1325(b)'s incorporation of CMI and the standard "means test" allowances for determination of PDI precludes looking beyond the financial snapshot that this formula captures at the petition date.

## C.

"Arguably no change in BAPCPA has generated as fundamental a difference in the bankruptcy courts' reported opinions as how to determine projected disposable income for above median income debtors in chapter 13." Hon. Thomas F. Waldron and Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA, 81 Amer. Bankr. L.J. 195-96 (Summer 2007). In attempting to

---

[9] Under pre-BAPCPA decisional law, in determining disposable income, the court would consider future events that could be predicted with reasonable certainty. In re Lanning, 380 B.R. 17, 20 (B.A.P. 10th Cir. 2007). See Commercial Credit Corp. v. Killough (In re Killough), 900 F.2d 61, 65 (5th Cir.1990) (potential for overtime income was too speculative to include in projected disposable income calculation); In re Brady, 361 B.R. 765, 769 (Bankr. D. N.J. 2007) (citing Lawrence P. King, 8 Collier on Bankruptcy, ¶ 1325.08[4][a] and [b] at 1325-50.10 (15th Ed. Rev. 2006)); In re McGovern, 278 B.R. 888, 895 (Bankr. S.D. Fla.2002) (future bonuses were too speculative to be included in the "projected disposable income" analysis), vacated on other grounds, 297 B.R. 650 (S.D. Fla. 2003).

find a proper methodology to make this determination, two basic and competing schools of

thought have emerged.   The first school relies upon Congress' retention of the word

"projected" adjacent to "disposable income."   It views "projected" and "to be received" in

§ 1325(b)(1)(B) as forward-looking modifiers of § 1325(b)(2)'s definition of "disposable

income," which is undisputably grounded in the historical data of CMI minus statutory

exemptions and expenses.  Thus, the Form 22C data is treated as a "starting point," and the

Court may look beyond that to the reality of a debtor's situation where the evidence so

warrants to forecast or predict PDI.  See In re Lanning, 380 B.R. 17 (B.A.P. 10th Cir. 2007);

Pak v. eCast Settlement Corp. (In re Pak), 378 B.R. 257 (B.A.P. 9th Cir. 2007); Kibbe v.

Sumski (In re Kibbe), 361 B.R. 302 (B.A.P. 1st Cir. 2007); In re Jass, 340 B.R. 411,

415 (Bankr. D. Utah 2006); In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006).

This forward-looking interpretation is advocated by the Trustee.  Tr. at 8 ("Your Honor,

we believe that it is a starting place with respect to the B22C").

The second viewpoint treats "projected" as a simple multiplier of "disposable

income," i.e., one takes the amount reflected in Form 22C as disposable income and

multiplies it by the number of months in the plan.  See, e.g. In re Alexander, 344 B.R. 742

(Bankr. E.D. N.C. 2006) ("to arrive at 'projected disposable income,' one simply takes

the calculation mandated by § 1325(b)(2) and does the math.").  Accord In re Mancl, 381

B.R. 537, 541 (Bankr. W.D. Wis. 2008); In re Brady, 361 B.R. 765, 770-71 (D. N.J. 2007).

In June, the Ninth Circuit Court of Appeals became the first circuit court to weigh in on

this issue, and followed Alexander's reasoning.  In re Kagenveama, --- F.3d ----, 2008

WL 2485570 (9th Cir. 2008).[10]  Debtors advocate this approach.  Debtors' Mem. at 10

(*citing* Kagenveama).

## D.

It initially appeared that I would have to add my voice to the debate among the courts

on the proper application of the §1325(b) projected disposable income requirement.

However, after considering the parties' memoranda and the record evidence, I find that

I need not do so.  Assuming for the purposes of the Objection and Motion that the future-

looking school of thought is the correct approach, the Trustee's Objection must still be

overruled.

The Trustee simply takes the $629 payment formerly devoted to the pension loans

and adds that amount to the proposed monthly plan payment of $315.  However, this

methodology is wholly inconsistent with the future-looking school of thought that the

Trustee embraces.  As the Trustee concedes, the starting point of PDI is the Form 22C.

This approach has been expressed by Judge Frank as follows:

> [A]lthough PDI is not fixed immutably by the Form 22C calculation for
> above-median chapter 13 debtors, absent evidence of changed circumstances
> (and assuming no objection to the accuracy of the information set forth on
> Form 22C), Form 22C will be the only evidence of and, therefore, conclusive
> as to the debtor's PDI. Briscoe, 374 B.R. at 19. In such cases, "Form 22C will
> ... have precisely the same function as the debtor's schedules had
> pre-BAPCPA: the evidentiary source for a presumption of disposable income
> that can be rebutted through the submission of extrinsic evidence." Id.

---

[10] Briscoe collects a number of decisions in the competing line of cases. 374 B.R. at 13 nn.
9-10 See also In re Phillips, 382 B.R. 153, 160 n.8 (Bankr. D. Mass. Feb. 7, 2008) (collecting
cases).

Orawsky, 387 B.R. at 153; accord Jass, 340 B.R. at 418 ("Form B22C will always be the starting point for the Court's inquiry . . . The Court will presume that the number resulting from Form B22C is the debtor's 'projected disposable income'"). Thus, I conclude that I must return to the starting point, i.e., Form B22C, not the chapter 13 plan, to determine whether Debtors' plan fails to include all their PDI.

In this case, the Trustee does not challenge Debtors' calculation of PDI as reflected on Form B22C and specifically agrees that the pension loan deduction as permitted by §1322(f) is appropriate. However, assuming Debtors did not have the permitted additional deduction for the pension loans, their PDI would still be a negative number and § 1325(b) would require no payments to unsecured creditors.[11] It would be counterintuitive to conclude that had Debtors no pension loan deduction (and therefore a greater PDI now), they would have no requirement to include payments to unsecured creditors but are required to pay approximately $629 monthly under their Plan to this constituency because their deduction ceases.[12]

---

[11] Subtracting the $629 in monthly loan payments from line 55 of the form results in a **negative** PDI of $147.

[12] My conclusion is based on the fact that with or without the loan deduction, the PDI is a negative number. It assumes, but does not decide, that the line of cases taking the forward looking approach is correct. Thus, I leave for another day the question of whether a PDI recalculated to exclude the loan deduction that results in a positive number requires a stepped up payment. Nor do I consider the proration approach articulated by the Court in In re Lasowski, 384 B.R. 205 (B.A.P. 8th Cir. 2008) and In re Novak, 379 B.R. 908 (Bankr. D. Neb. 2007). The issue before those courts was whether § 1322(f)'s protection of only the "amounts required to repay" the loans required prorating the loan payments in performing the PDI calculation. That inquiry was relevant because those cases involved debtors with positive PDI outside of the loans at issue. 384 B.R. at 207, 379 B.R. at 909. How those payments were applied made a difference in PDI, i.e., the amount required to be paid to unsecured creditors. Here it does not. Regardless of how the pension loan payments are added back to the PDI calculation, either the full amount or pro rata, they are insufficient to take PDI out of the red.

The Trustee's view of the pension loan payments as "extra" money is clearly based on an assumption that Debtors' net monthly income as reflected on Schedule I and J is the appropriate barometer. However, even under the forward-looking school of thought, Schedules I and J <u>alone</u> can no longer provide a basis for determining projected disposable income, for that would disregard the mandate of § 1325(b)(2)-(3) to begin with CMI and the National and Local Standard expenses. "Instead, 'courts must consider changes in circumstances, both increases and decreases to income and expenses, to a debtor's financial situation, <u>being always guided by the allowed methodology set forth in the means test</u>.'" <u>Briscoe</u>, 374 B.R. at 19 (*quoting* <u>In re LaPlana</u>, 363 B.R. 259, 266 (Bankr. M.D. Fla. 2007) (emphasis added in original)). <u>See also Orawsky</u>, 387 B.R. at 153.[13] Where a plan already

---

[13] The Trustee relies on <u>In re Nowlin</u>, 366 B.R. 670 (Bankr. S.D. Tex. 2007) which involved a Debtor with a 401(k) loan that would be satisfied in month 24 of a 60-month plan. In directing that the amount of loan payments should be put into the plan when they terminated, the Court found support in my prior decision in <u>In re Lenton</u>, 358 B.R. 651 (Bankr. E.D. Pa. 2006), and thus I need to harmonize this decision with <u>Lenton</u>. Specifically <u>Nowlin</u> quoted from <u>Lenton</u> as follows:

> Debtor's argument also ignores two important realities. First, 401(k) loan repayments are finite; a loan will eventually be paid off. Second, a Chapter 13 case is prospective, i.e., it encompasses a debtor's current and future financial circumstances for a period of three to five years. Section 1322(a) requires that a Chapter 13 plan "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." <u>Id.</u> (emphasis added). Section 1325(b)(1)(B) requires debtors to use all of their "projected disposable income" over a commitment period of three to five years. <u>See, e.g.</u> <u>In re McPherson</u>, 350 B.R. 38, 43-44 (Bankr. W.D. Va. 2006). Furthermore, § 521(f) requires a debtor, upon request, to file tax returns and updated statements of income and expenses during the pendency of the case. Excluding 401(k) loans from the means test evidences a "wait and see" approach that would channel debtors with such expenses into the longer period of bankruptcy supervision of Chapter 13 rather than the relatively short tenure of a Chapter 7 case, notwithstanding that doing so might result in a zero payment plan. However, *because, as here, 401(k) loans might be paid off within the commitment period of a Chapter 13 case, the ability to increase the monthly plan payment would direct newly available funds to creditors.* Such an approach serves

(continued...)

includes some distribution to unsecured creditors, this mechanical approach could require

a greater commitment than contemplated by the statute.

Given the outcome here, I need not address the issue raised by Debtors' suggestion

that rather than require a step up of plan payments when the loan payments cease in order

to propose a plan confirmable under § 1325(b)(1), the Trustee can move for plan

modification at that time.  The Trustee finds that approach nonsensical where, as here,

the cessation of loan payments is a certainty.[14]  Given that the Trustee has presented the issue

_____

(...continued)
both the Congressional intent to protect retirement contributions and "ensure that
debtors repay creditors the maximum they can afford," a primary goal of BAPCPA.
H.R. Rep. 109-31, pt. 1 at 1, as reprinted in 2005 U.S.C.C.A.N. 88, 89 (2005).

Nowlin, 366 B.R. at 675 (quoting 358 B.R. at 660 (emphasis added in original)).  This quotation
must be placed in context.  Lenton involved a § 707(b) motion brought by the United States Trustee.
In that case I held, inter alia, that the funds devoted to a 401(k) loan repayment must be considered
as part of the debtor's ability to pay inquiry under § 707(b)(3), notwithstanding that those payments
would be excluded from disposable income in a chapter 13 case by § 1322(f).  The above-quoted
passage merely addresses Lenton's argument that such a holding renders superfluous § 1322(f) and
other provisions protecting pension loan payments.  358 B.R. at 659.  While I agree that the sentence
highlighted by the Nowlin court evidences my assumption that newly available funds would be
directed to a plan, that sentence is pure dictum.  Whether in a chapter 13 case Lenton would have
been required to confirm a plan with a step-up provision directing some or all of the loan payments
to unsecured creditors was not before me in that Chapter 7 case.  In any event, whether an increase
in plan payment would be required must, as noted, start with Form 22B and can never be premised
on the simple addition of the loan payments to the plan.

[14] As I have held that some change in circumstances is necessary to justify modification
under § 1329, albeit without having had to articulate a quantum of change or that it be unanticipated,
see In re Perry, 2008 WL 185617 (Bankr. E.D. Pa. Jan. 8,2008); In re Gallagher, 332 B.R. 277, 281,
282 (Bankr. E.D. Pa. 2005), the Trustee's approach is understandable.  While recognizing the
availability of § 1329 to modify a plan, Debtors' view is that all changed circumstances, including
some that are likely, if not as certain, to occur should be considered when they occur and that one
change, the loan repayment, should not be isolated at this time.

Since § 1329 has not been amended by BAPCPA, the historical test for confirmation would
appear to yield a different result from the test for modification which does not expressly incorporate
(continued...)

to me at this time, I need not decide what the outcome of a modification motion would be at some future date.

For the reasons discussed above, I find that Debtors' Chapter 13 plan is proposed in good faith, does not fail to commit all projected disposable income over its term and should be confirmed. Accordingly, the Objection is overruled and the Motion to Dismiss is denied. An order consistent with this Memorandum Opinion shall be entered.

_____
DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: September 17, 2008

---

(...continued)
§ 1325(b). Indeed this is one rationale that has been relied upon for rejecting the historical approach to PDI. In re Pak, 378 B.R. 257, 268 (9th Cir. B.A.P Nov. 7, 2007) (holding rejected in In re Kagenveama, — B.R. — , 2008 WL 2485570 (9th Cir. 2008)); In re Gonzalez, 388 B.R. 292 (Bankr. S.D. Tex. 2008 ). Neither party appears to have considered this disharmony in the statute and as noted the resolution of this issue is not necessary for this decision.